**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

MORGAN & MORGAN, P.A.; and ALEXANDER M. CLEM;

Plaintiffs,

v.

THE FLORIDA BAR; JOSHUA E. DOYLE, in his official capacity as Executive Director of The Florida Bar; JONATHAN GRABB, in his official capacity as Chief Ethics Counsel of The Florida Bar; and LAURA N. GRYB, in her official capacity as Chief Branch Discipline Counsel of the Orlando Branch of The Florida Bar;

Defendants.

No. ________________

# COMPLAINT

## TABLE OF CONTENTS


Introduction ........ i

Jurisdiction and venue ........ 4

Parties ........ 4

Factual background ........ 6

A. Florida stands apart from every other state in its history of broadly restricting the content of lawyer advertising. ........ 6

B. Florida's rule banning celebrities in lawyer ads makes it an extreme national outlier. ........ 9

C. Florida's celebrity rule lacks evidentiary support. ........ 11

D. Florida's celebrity rule is too vague to provide notice of what is prohibited. ........ 20

E. Absent the requested relief, the plaintiffs face the risk of disciplinary action for running their advertising in Florida. ........ 21

Claims for relief ........ 24

Claim one: Violation of the First Amendment (under 42 U.S.C. § 1983) ........ 24

Florida has no valid interest in restricting celebrity advertising. ........ 25

No evidence suggests that celebrities in lawyer ads are "unduly manipulative," misleading, or otherwise harm consumers. ........ 26

The rule is far more extensive than necessary to accomplish the state's claimed goal. ........ 31

The rule is poorly designed to protect consumers. ........ 33

Claim two: Void for vagueness (under 42 U.S.C. § 1983) ........ 34

Request for relief ........ 36

## INTRODUCTION

For decades, Florida has stood alone among the states in imposing the most "restrictive measures to control attorney advertising." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1248 (11th Cir. 2010). In an attempt to limit the impact of the U.S. Supreme Court's decision in *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977), which held that lawyers have a First Amendment right to advertise, Florida adopted "extensive attorney advertising rules" aimed at restricting "a wide range of common advertising content, such as statements of quality, comparisons, background sounds, and other stock advertising techniques." *Harrell*, 608 F.3d at 1247–48. Courts have since struck down most of these content-based restrictions either as violations of the First Amendment or as unconstitutionally vague. One rule, however, has thus far managed to avoid judicial review: Florida Rule of Professional Conduct 4-7.15(c), which categorically prohibits any lawyer advertising containing "the voice or image of a celebrity." The rule prohibits such advertising not just in broadcast media, but also in "newspapers, magazines, brochures, flyers, … websites, social networking," or any other "print or electronic" medium.

This case challenges the constitutionality of that rule. Like other advertising rules struck down by the courts, the Bar's restriction on celebrities targets a ubiquitous advertising technique that poses no realistic (or even theoretical) risk to consumers. Celebrities, by definition, are widely recognized by the public. So,

allowing them in lawyer ads—as every other state already does—poses no real-world risk. And like the commonplace advertising devices prohibited by the Bar's other unconstitutional rules, the use of celebrities in lawyer ads serves an "important communicative function[]." *Zauderer v. Off. of Disciplinary Counsel*, 471 U.S. 626, 647 (1985). Most consumers have never hired a lawyer and are intimidated by the prospect of consulting one. Advertising techniques that "attract[] the attention of the audience to the advertiser's message," like the use of celebrities, allow lawyers to reach those who might otherwise never learn of their legal rights or consider seeking legal help. *Id.* It would be unthinkable for a state to restrict such devices in any other kind of advertising—to prohibit, for example, Michael Jordan in Nike's ads or William Shatner in Priceline's ads. Yet the Bar imposes just such restrictions on lawyers and law firms in Florida. *See* Fla. Bar, Advert. Committee File No. 05-00256 (prohibiting lawyer advertisement including William Shatner). And it does so without justification. Although the Bar claims such ads are "unduly manipulative," survey evidence from its own files shows the opposite: that "consumers do not attach such unquestioning trust to the words of celebrities."

Rule 4-7.15(c) exacerbates that problem by extending far beyond traditional celebrity endorsements to prohibit *any* use of a celebrity's voice or image, no matter how unobjectionable. The rule would thus bar publishing the image of a prominent civil-rights leader who recommends a civil-rights law firm. Or endorsements by well

known religious leaders or gun-rights activists of like-minded lawyers. It would likewise restrict websites like the ACLU of Florida's, which commonly features guest posts by celebrities.[1] Although these posts pose no conceivable risk of harm, the rule would prohibit them simply because they include the author's image. Further, the rule adopts a definition of "celebrity" that is unreasonably broad, extending to anyone who is "recognizable" to an ad's target audience even "on a regional or local level"—a definition that would include not just typical celebrities but local politicians and business owners, among countless others. It would thus bar a commercial litigation firm from featuring business leaders like former Disney CEO Michael Eisner.[2] Because the rule prohibits speech that the state has no legitimate interest in regulating, it violates the First Amendment to the U.S. Constitution.

On top of that, the rule is also unconstitutionally vague. Because it never specifies *how* recognizable a "celebrity" must be, and because the precise degree of a person's recognizability will typically be difficult or impossible to pin down, the rule's applicability in each case turns on a matter of opinion about which reasonable people

---

[1] *See* George Takei, *How the Alien Enemies Act Paved the Way for the Incarceration of My Family*, (May 27, 2025), https://perma.cc/8XZ7-BXMH (commenting on the relevance of the ACLU's recent legal advocacy in light of his family's experience in a World War II internment camp); *see generally ACLU Artist and Entertainment Partners*, ACLU, https://perma.cc/L8X4-H4GQ (listing celebrity partners).

[2] *See*, *e.g.*, *Michael Eisner*, Williams Parker, https://perma.cc/YYS2-BUDB.

may disagree. How Bar authorities will apply the rule is thus fundamentally unpredictable, subjecting lawyers and law firms to arbitrary and discriminatory enforcement in violation of the Due Process Clause.

Rule 4-7.15(c) prohibits plaintiff Morgan & Morgan, P.A. from running advertisements in Florida that it may freely run in any other state—at substantial economic cost and in violation of the free speech and due process rights of the law firm, its owners, and its member attorneys. The plaintiffs therefore seek an injunction preventing enforcement of the rule against the firm and its lawyers, as well as a declaration that Rule 4-7.15(c) is unconstitutional.

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

2. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because defendant The Florida Bar resides in the district and all defendants are residents of the state in which the district is located.

3. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in the district.

## PARTIES

4. Plaintiff Morgan & Morgan, P.A. is a law firm based in Orlando, Florida. The firm advertises in a variety of media, including in print, on television

and radio, on billboards, and on the firm's website. It has already developed advertising campaigns containing the "voice or image" of celebrities that it actively runs in other states, and it would run those ads in Florida too if it were allowed to do so. But it cannot, because the ads would run afoul of Florida Rule of Professional Conduct 4-7.15(c).

5. Plaintiff Alexander M. Clem is CEO of Morgan & Morgan and an attorney based at the firm's Orlando office. He is responsible for submitting Morgan & Morgan's ads to the Florida Bar for review. He is a member in good standing of the Florida Bar and eligible to practice law in Florida.

6. Defendant The Florida Bar is an arm of the Florida Supreme Court. It is responsible for approving lawyer advertising, issuing advisory opinions related to lawyer advertising, and investigating and prosecuting alleged violations of the advertising rules.

7. Defendant Joshua E. Doyle is Executive Director of The Florida Bar and is responsible for overseeing all the Bar's activities, including its regulation of lawyer advertising.

8. Defendant Jonathan Grabb is Chief Ethics Counsel of The Florida Bar. His responsibilities include reviewing advertisements submitted for review by Florida lawyers for compliance with the advertising rules and issuing opinions either approving or disapproving of those ads.

9. Defendant Laura N. Gryb is Chief Branch Discipline Counsel for the Florida Bar's Orlando branch. She is responsible for investigating and prosecuting attorneys for alleged violations of the advertising rules.

## FACTUAL BACKGROUND

### A. Florida stands apart from every other state in its history of broadly restricting the content of lawyer advertising.

10. Until the U.S. Supreme Court's decision in *Bates*, 433 U.S. 350, Florida's ethics rules governing lawyers and law firms followed the American Bar Association's Model Code of Professional Responsibility in prohibiting almost all forms of advertising by lawyers in the state. *See The Fla. Bar Amend. to Fla. Bar Code of Prof'l Resp.*, 380 So. 2d 435, 435–36 (Fla. 1980).[3]

11. In *Bates*, the Supreme Court declared Arizona's version of the Model Code unconstitutional, holding that attorney advertising is a form of protected speech that the state can restrict only in furtherance of an important government interest. 433 U.S. 350. The Court rejected Arizona's argument that lawyer advertising would "tarnish the dignified public image of the profession," finding Arizona's "postulated connection between advertising and the erosion of true professionalism to be severely strained." *Id.* at 368. On the contrary, the Court cited

[3] Unless otherwise noted, all internal quotation marks, citations, alterations, brackets, and ellipses have been omitted from quotations throughout this complaint.

evidence that "[t]he absence of advertising may be seen to reflect the profession's failure to reach out and serve the community." *Id.* at 370–71.

12. In part as a response to *Bates* and subsequent Supreme Court decisions, the American Bar Association in 1983 adopted a completely redrafted set of rules: the Model Rules of Professional Conduct. The Model Rules eliminated many lawyer-advertising restrictions that were unrelated to protecting consumers, focusing instead on Rule 7.1's prohibition of "false or misleading communication about the lawyer or the lawyer's services." Model Rule of Prof'l Conduct 7.1, 7.2 cmt. 3.

13. The Florida Supreme Court initially adopted a modified version of the ABA's Model Rules that broadly permitted lawyer advertising so long as it was not misleading. *See In re Rules Regulating The Fla. Bar*, 494 So. 2d 977, 1071–72 (Fla. 1986). Although a comment to the rules generally encouraged lawyer advertisements to "comport with the dignity of the profession," it also recognized that "effectiveness and taste" are "matters of speculation and subjective judgment," and that regulating them would "assume[] that the bar can accurately forecast the kind of information that the public would regard as relevant." *Id.*

14. Even as the ABA worked to further loosen advertising restrictions in response to U.S. Supreme Court decisions like *Bates*, Florida took the opposite tack. Responding to the "proliferation of attorney advertising in the wake of [] *Bates*," Fla. Bar Advert. Task Force 2004, *Report & Recommendations*, A-1 (2005), the Florida

Supreme Court began in 1990 to expand its advertising restrictions to "apply expansively to a wide range of common advertising content." *Harrell*, 608 F.3d at 1247–48.

15. Among many other restrictions, Florida's amendments imposed new prohibitions on client testimonials; references to past results; statements that describe the quality of the lawyer's services; slogans and jingles; background sounds; and visual or verbal depictions considered to be "manipulative," such as those that "create suspense, or contain exaggerations" or appeals to the emotions. *Id.* at 1248. These prohibitions reoriented the state's advertising rules by no longer disclaiming regulation of "questions of effectiveness and taste," and adopting instead essentially the opposite rule—a requirement that ads "provide only useful, factual information presented in a nonsensational manner." *Id.*

16. For many years, the Florida Bar aggressively enforced these restrictions without regard to whether they targeted advertising that risked harm to the public. Among many other examples, the Bar applied its rules to prohibit advertisements containing everything from three-legged dogs to pit bulls, from Muhammad Ali to old women with walkers, and from squealing breaks to the sound of a light switch turning off.

17. Moreover, the vague and malleable nature of the rules allowed Bar administrators to "engage in any pattern of decision that they find to be suitable at

any time." *Harrell v. The Fla. Bar*, 2008 WL 596086, at *10 (M.D. Fla. 2008). To name just a few of its inconsistencies, the Bar prohibited images of tigers but allowed images of panthers, prohibited images of fortune tellers but allowed images of wizards, prohibited a firm from calling itself "Freedom Law" but allowed "Liberty Law," and prohibited a pledge to "fight insurance companies" while allowing a pledge to "stand up" to them. *See Harrell*, 608 F.3d at 1255–56.

18. In the years since Florida adopted these restrictions, federal courts have struck down many of them as unconstitutional. *See Harrell v. Fla. Bar*, 915 F. Supp. 2d 1285, 1300–01 (M.D. Fla. 2011) (holding unconstitutional the rules' attempt to limit lawyer ads to "useful, factual information"); *id.* at 1299 ("manipulative" ads); *id.* at 1309–10 (background sounds); *id.* at 1308–09 (quality of the lawyer's services); *Searcy v. Fla. Bar*, 140 F. Supp. 3d 1290, 1298 (N.D. Fla. 2015) (specialty or expertise); *Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1301 (S.D. Fla. 2014) (past results).

19. Until now, however, Rule 4-7.15(c) has not faced a constitutional challenge, and its constitutionality has never been adjudicated.

### B. Florida's rule banning celebrities in lawyer ads makes it an extreme national outlier.

20. Alone among the states, Florida's ethics rules governing lawyers and law firms impose a blanket prohibition on advertisements that include the "voice or image of a celebrity." Fla. Rule Prof'l Conduct 4-7.15(c). The rule provides:

## RULE 4-7.15 UNDULY MANIPULATIVE OR INTRUSIVE ADVERTISEMENTS

A lawyer may not engage in unduly manipulative or intrusive advertisements. An advertisement is unduly manipulative if it:

…

(c) contains the voice or image of a celebrity, except that a lawyer may use the:

(1) the voice or image of a local announcer, disc jockey or radio personality who regularly records advertisements so long as the person recording the announcement does not endorse or offer a testimonial on behalf of the advertising lawyer or law firm, or

(2) testimonial of a celebrity who is a current or former client [if] the testimonial complies with the requirements of this subchapter ….

### COMMENT

…

### Use of celebrities

A lawyer or law firm advertisement may not contain the voice or image of a celebrity with limited exceptions. A celebrity is an individual who is known to the target audience and whose voice or image is recognizable to the intended audience. A person can be a celebrity on a regional or local level, not just a national level. Local announcers or disc jockeys and radio personalities are regularly used to record advertisements. Use of a local announcer or disc jockey or a radio personality to record an advertisement is permissible under this rule as long as the person recording the announcement does not endorse or offer a testimonial on behalf of the advertising lawyer or law firm. Additionally, an advertisement may include the testimonial of a celebrity who is a current or former client of the advertising

> lawyer or law firm if the testimonial complies with all other applicable requirements of this subchapter.

21. The rule is unprecedented nationwide. Other than Florida, only Pennsylvania singles out the use of celebrities in lawyer advertising for special treatment. But even Pennsylvania's rule is significantly narrower than Florida's: It prohibits only "an *endorsement* by a celebrity or public figure." Pa. R. Prof'l Conduct 7.2(e) (emphasis added). That leaves Florida as the only state in the nation to prohibit *any* use of a celebrity's voice or image—even when the celebrity does not endorse or recommend the advertising lawyer, and there is thus nothing in the ad by which consumers could even potentially be misled.

22. There is no evidence to suggest that the vast majority of states that continue to allow any use of celebrities in lawyer advertising, or the one state that prohibits only celebrity endorsements, have been unable to adequately protect their citizens from misleading ads.

### C. Florida's celebrity rule lacks evidentiary support.

23. A state may restrict commercial speech, including lawyer advertising, only in response to evidence that the restriction is necessary to remedy an important problem, and then only when the restriction is "a last—not first—resort." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002). The state needs actual evidence, not "mere speculation and conjecture," "that the harms it recites are real and that its

restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993).

24. In adopting Rule 4-7.15(c), Florida did not attempt to satisfy that burden. Although the Florida Bar and the Florida Supreme Court have advanced shifting justifications for Rule 4-7.15(c), they have not cited any evidence backing up their claims. Rather than being based on evidence, Rule 4-7.15(c) is a holdover from an earlier set of Florida ethics rules that prohibited a range of common advertising devices for the express purpose of limiting the U.S. Supreme Court's decision in *Bates.*

25. Florida's blanket prohibition on celebrities is the product of multiple rounds of amendments adopted over decades. Despite convening multiple task forces and multiple rounds of public-opinion surveys, the Bar has yet to uncover *any* evidence suggesting that celebrities in lawyer advertising mislead or manipulate consumers or that the rule serves any other valid state purpose. To the contrary, the evidence that the Bar has accumulated directly contradicts its stated reasons for the rule.

26. ***1990 Amendments.*** Before 1990, the Bar's ethics rules said nothing about celebrities—without evidence of resulting harm to the public. That year, the Florida Supreme Court adopted its first celebrity restriction as part of a "complete overhaul" of the rules. The Fla. Bar Joint Presidential Advert. Task Force, *Final Rep.*

*& Recommendations* 3 (May 30, 1997). For the first time, the amendments required television and radio advertisements to "be articulated by a single voice," which the rules specified could not be "that of a celebrity whose voice is recognizable to the public." *In re Pet. to Amend the Rules Regulating the Fla. Bar*, 571 So. 2d 451, 461 (1990).

27. The Bar's initial justification for that restriction was "the unique and powerful characteristics of electronic media," which the Bar claimed made advertising "especially susceptible to abuse and especially subject to regulation in the public interest." Pet. at 4, *In re Pet. to Amend the Rules Regulating the Fla. Bar*, No. 74987 (Nov. 7, 1989). The Bar explained that restrictions on who may appear or speak in television ads—including the prohibition on "celebrity" voices—were necessary to counter television's "unique power to induce viewers to respond immediately, without reflection." Br. of The Florida Bar at 12, *In re Pet. to Amend the Rules Regulating the Fla. Bar*, No. 74987 (Jan. 22, 1990).

28. Neither the Bar nor the Court, however, cited any evidence suggesting that celebrities unduly influence or manipulate consumers in that way, or that they otherwise pose a risk to the public. The only evidence related to celebrities that the Bar collected—an opinion survey on public attitudes to lawyer advertising—found the opposite: that "consumers do not attach such unquestioning trust to the words of celebrities." Tom L. Lee, *Lawyer Advertising: Consumer Attitudes, Response Patterns and Motivation Factors* 156 (1985). To the contrary, respondents "uniformly affirmed the

view that celebrities are only paid performers" whose inclusion in advertising more likely "elicits suspicion rather than trust, simply by virtue of overexposure." *Id.*

29. ***1999 Amendments.*** Unsatisfied with the impact of its new advertising rules, the Bar convened a second task force in 1995 to recommend further amendments. The Fla. Bar Joint Presidential Advert. Task Force, *Final Rep. & Recommendations* at 3, 9, 27–28 (May 30, 1997). The task force started with the assumption that, because of "blatant commercialization of the profession," lawyer advertisements had begun relying too much on "irrelevant attention getting devices" rather than "useful information that could aid [the public] in the rational selection of legal counsel." *Id.* at 3, 9, 27–28.

30. The task force's proposed amendments, later adopted by the Florida Supreme Court, expanded the rules' restriction on celebrities to prohibit *any* "person's voice or image, other than that of a lawyer who is a member of the firm whose services are advertised." *Amends. to Rules Regulating the Fla. Bar—Advert. Rules*, 762 So. 2d 392, 422 (Fla. 1999). The "purpose of the proposed rule [was] to eliminate irrelevant and extraneous factors to the process of choosing an attorney, such as the appearance of an actor or other nonlawyer spokesperson." The Fla. Bar's Resp. to Comments at 2–3, *In re Pet. to Amend the Rules Regulating the Fla. Bar*, No. 92297 (Apr. 3, 1998). The Bar saw this as "a logical extension" of the existing rule "prohibit[ing] misleading information." *Id.* "Testimonials by celebrities," the task force wrote,

"carry the inherent risk that a potential client will be unduly influenced by the celebrity's fame or personality to the exclusion of those matters which are meaningful in the choice of a lawyer." The Fla. Bar Joint Presidential Advert. Task Force, *Final Rep. & Recommendations* at 14 (1997).

31. Again, however, the task force failed to substantiate its claims with evidence. Although it commissioned a consumer survey and convened focus groups to gauge the public's attitude toward some common advertising devices, the use of celebrities was not one of the devices studied. The survey and focus groups thus did not include advertisements containing celebrity voices or images, nor did they ask consumers about their views on such ads.

32. ***2004 Amendments.*** The Court in 2004 amended the celebrity ban to allow a "non-attorney spokesperson speaking on behalf of the attorney or law firm." *Amend. to the Rules Regulating The Fla. Bar*, 875 So. 2d 448, 520 (Fla. 2004). Nevertheless, the rule continued to expressly prohibit the use of a "celebrity" with a "voice or image that is recognizable to the public." *Id.* Neither the Bar nor the Court gave any reason for retaining that limit, stating simply that the rule was "amended to prohibit the use of a celebrity spokesperson." *Id.* at 454.

33. ***2007 Amendments***. Just months after adoption of its 2004 amendments, the Bar formed yet another task force "charged with reviewing the attorney advertising rules and recommending changes to [them] if deemed

necessary." *In re Amends. to the Rules Regulating The Fla. Bar—Advert.*, 971 So. 2d 763, 763 (Fla. 2007). Although the task force recommended retaining the ban on use of celebrities, its report provided no basis for that recommendation other than the unsupported views of two committee members who believed that "there is a tendency of the public to make decisions on the basis of a celebrity lending credibility" to the advertising lawyer. Fla. Bar Advert. Task Force 2004, *Rep. & Recommendations*, A-14–A-15 (2005).

34. Two members of the task force objected to its conclusions. One complained that the task force had relied on its members' "personal experiences and personal preconceived interests" instead of "empirical studies and expert objective opinion regarding how advertising is received by its intended audience." Comments of Bill Wagner 5–6, *In re. Pet. to Amend. Rules Regulating The Fla. Bar*, No. 05-2194 (Jan. 13, 2006). Another pointed out that the task force had identified "absolutely no record of complaints or bar grievances" and "thus [had] no legal basis for restricting protected commercial speech." Comment & Notice of Objection 1–2, *In re Amends. to Rules Regulating The Fla. Bar*, No. 05-2194 (Jan. 31, 2006).

35. Notwithstanding the lack of evidence, and without conducting further studies, the Florida Supreme Court adopted the Bar's proposal to retain the celebrity ban. *In re Amends. to the Rules Regulating The Fla. Bar—Advert.*, 971 So. 2d 763, 783 (Fla. 2007). At the same time, however, the Court responded to the dissenting members'

concerns by ordering the Bar to "undertake an additional and contemporary study of lawyer advertising, which shall include public evaluation and comments about lawyer advertising." *Id.* at 765.

36. ***2009 Amendments.*** Before that study was completed, the Bar in 2008 recommended further expanding the celebrity ban, then "applicable only to television and radio," to make it "applicable to *all* media"—including print and internet ads. Pet. at 37, *In re Pet. to Amend Rules Regulating The Fla. Bar*, No. 08-1890 (Oct. 7, 2008) (emphasis added). The Florida Supreme Court adopted the proposed amendment. *See In re Amends. to the Rules Regulating The Fla. Bar*, 24 So. 3d 63, 133 (Fla. 2009); *see also In re Amends. to the Rules Regulating The Fla. Bar—Rule 4-7.6, Computer Accessed Commc'ns*, 24 So. 3d 172 (Fla. 2009) (explaining that the Court "intend[ed] that websites be subject to all of the substantive advertising regulations applicable to other advertising media"). The Bar explained the amendment as "recogni[zing] that other media now have similar capabilities as television and radio" and "simplifying the rules so that they are more rules of general application." Pet. at 37, *In re Pet. to Amend Rules Regulating The Fla. Bar*, No. 08-1181.

37. ***2013 Amendments.*** The Bar completed its promised study in 2011, which included another "bar-sponsored survey on public attitudes about lawyer advertising." Pet. at 10, *In re Amends. to Rules Regulating The Fla. Bar*, No. 11-1327 (July 5, 2011). Based on the survey's findings, the Bar concluded that the "lawyer advertising

rules must be entirely re-structured" to focus less on matters of taste and instead "primarily on preventing the dissemination of misleading and unduly manipulative information." *Id.* To accomplish that goal, the Bar proposed eliminating many of the rules' content-based restrictions.

38. Without providing any reasoning or evidence, however, the Bar recommended retaining the ban on use of celebrities in Rule 4-7.15(c). Far from supporting that recommendation, the Bar's public-opinion survey found that consumers rate celebrity endorsements as "by far the *least* important consideration" in choosing a lawyer. Fla. Bar, *Survey of Public Attitudes toward Lawyer Advert.* 29, 31 (March 2011) (emphasis added).

39. Despite the lack of any evidentiary support, the Florida Supreme Court adopted the Bar's proposal for Rule 4-7.15(c), which remains in place today. The amended rule replaces a former prohibition on "manipulative" advertisements, which a federal court had recently declared unconstitutional, with one on "*unduly* manipulative" ads. *In re Amends. to Rules Regulating The Fla. Bar—Subchapter 4-7, Lawyer Advert. Rules*, 108 So. 3d 609, 625 (Fla. 2013) (emphasis added). Without explaining what distinguishes "manipulative" from "unduly manipulative" advertising, the rules specified that an "advertisement is unduly manipulative" if, with limited exceptions, it "contains the voice or image of a celebrity." *Id.* at 625–26. And it applied that

restriction broadly to "*all* forms of communication in any print or electronic forum." *Id.* at 616 (App. Rule 4-7.11(a)) (emphasis added).

40. The Court adopted an expansive definition of "celebrity" that includes any "individual who is known to the target audience"—even on just "a regional or local level"—and whose "voice or image is recognizable to the intended audience." *Id.* at 627 (App. Rule 4-7.15(c), cmt.). The Court also added exceptions to Rule 4-7.15(c)—including one for advertisements read by "a local announcer, disc jockey or radio personality"—that equally lack support in the record and that undermine the rule's claimed purpose. *Id.* at 626 (App. Rule 4-715(c)).

41. Justice Canady dissented from adoption of the amendments, concluding that the proposed rules—particularly those, like Rule 4-7.15(c), that purport to restrict "unduly manipulative" advertising—remained "unduly restrictive." *Id.* at 615–16. He would have instead "reject[ed] the proposed rules and direct[ed] that the Bar propose revised rules that go further to address concerns related to the protection of First Amendment rights." *Id.* Justice Pariente also dissented, objecting to the rules' "one-size-fits-all approach." *Id.* at 611–12. Websites, she reasoned, do not justify the same treatment as television and radio advertisements, because they "must be affirmatively sought out and have the ability to provide a potential client with an abundance of information." *Id.*

### D. Florida's celebrity rule is too vague to provide notice of what is prohibited.

42. Rule 4-7.15(c) adopts a broad definition of "celebrity," covering anyone whose voice or image is "recognizable" to an ad's "target audience" on a "national," "regional," or "local level." Rule 4-7.15(c), cmt. On its face, that definition pulls in many people who would not be considered "celebrities" under the ordinary meaning of that term, including local political, civil-rights, and business leaders. The Bar concluded, for example, that real-estate investment coaches were "celebrities" under the rule because the target audience—participants in a real-estate webinar—would have recognized them. Likewise, it decided that a podcaster was a "celebrity" to subscribers of his podcast—rendering any lawyer advertisements on that channel in violation of the rule.

43. The rule does not provide any measurable standard for when voice or image is "recognizable" to a target audience—including the percentage of the target audience to which the celebrity must be recognizable. The standard of recognizability required is not explained in the rule or in any materials published by the Bar. And no other state has a comparable rule that might provide guidance on the restriction's meaning.

44. Even if the rule provided a measurable standard, the precise degree of a particular person's recognizability is usually difficult or impossible to pin down—at least without resort to infeasibly expensive public-opinion surveys.

45. The rule's applicability in each case thus comes down to the opinion of Bar authorities about an individual celebrity's recognizability. As a result, it is frequently impossible for lawyers to effectively predict how the Bar will apply the rules.

46. For example, the Bar's Standing Committee on Advertising decided that former NBA player Chandler Parsons, as he appeared in a Morgan & Morgan ad, was not recognizable to the intended audience two years after his retirement in 2020. It did so without reference to any surveys or other evidence bearing on Parsons' recognizability. And the Bar likewise decided—again without reference to evidence—that the depiction of Jody Reed, a former major-league baseball player, did not violate the rule because Reed "ended his professional baseball career in 1997 and was not readily recognizable by his on-screen image alone" when the ad aired in 2015. *See* Fla. Bar, Advert. Committee File No. 15-01082.

47. The Bar's unpredictable application of the rule fails to provide adequate guidance to advertising lawyers about what is prohibited, and subjects lawyers and law firms to arbitrary and discriminatory enforcement.

### E. Absent the requested relief, the plaintiffs face the risk of disciplinary action for running their advertising in Florida.

48. Members of the Florida Bar are required to comply with extensive restrictions on the content of lawyer advertising set forth in the Florida Rules of Professional Conduct. *See* Rule of Discipline 3-4.2. Lawyers who are successfully

prosecuted for violating the Florida Rules of Professional Conduct are subject to discipline, including public reprimand, suspension, and disbarment. Rules 3-4.2, 3-5.1.

49. The rules impose responsibility for a law firm's compliance with the rules on the firm's partners and managing lawyers, including plaintiff Alexander Clem. *See* Rule 4-5.1.

50. As Chief Branch Discipline Counsel for the Florida Bar's Orlando branch, defendant Laura N. Gryb is responsible for carrying out that enforcement against the plaintiffs. She is charged with investigating alleged violations of the rules and either prosecuting or dismissing disciplinary charges.

51. Morgan & Morgan has previously requested, and the Bar has denied, permission to run advertisements in Florida featuring celebrities. The Bar informed the firm, for example, that it was prohibited from running advertisements featuring former basketball player Shaqille O'Neal, actor and professional stock-car racing driver Frankie Muniz, NASCAR driver Kyle "Rowdy" Busch, and professional golfer John Daly. The Bar likewise concluded that a proposed billboard offering a free youth football camp violated the rule because it included an image of Miami Hurricanes player Malachi Toney. It informed the firm that it could use the billboard only if it removed the firm's logo and other identifying content that could be considered advertising for the firm. Morgan & Morgan still wishes to run these or

similar celebrity advertisements in Florida. But it cannot, because it would face discipline under Rule 4-7.15(c) for doing so.

52. In states other than Florida, advertisements for Morgan & Morgan commonly include the voices and images of celebrities, including the celebrities listed in the previous paragraph. The firm wishes to run these or similar advertisements in Florida. But it cannot, because it would face discipline under Rule 4-7.15(c) for doing so.

53. In April, Morgan & Morgan asked the Bar's Board of Governors to propose amending Rule 4-7.15(c) to allow the use of celebrities in lawyer advertising with an appropriate disclaimer. The Board took no action on the proposed amendment at its next meeting.

54. Given the delay, Morgan & Morgan requested that the Board immediately suspend enforcement while the Bar and the Florida Supreme Court considered the proposed amendment. A Board committee charged with reviewing the firm's requests identified no evidence supporting the rule. Gemma Torcivia, chair of the Bar's Standing Committee on Advertising, told the committee that it is not "advisable to permit the use of celebrities in advertising" because it "will confuse the public" and "create a negative potential perception." The committee has yet to recommend adoption of the rule or suspension of enforcement, and the Board of Governors has taken no action.

55. Even assuming the Bar did eventually agree to propose an amendment, it would be months or years before the Florida Supreme Court could consider and adopt the proposed amendment, during which time Morgan & Morgan and its lawyers would be subject to an indefinite period of constitutional and economic injury.

## CLAIMS FOR RELIEF

### Claim one: Violation of the First Amendment (under 42 U.S.C. § 1983)

56. To justify its restriction on lawyer advertising, the state has the burden of proving that the speech it prohibits is false or misleading, or that the restriction "directly advances" some other important state interest. *Thompson*, 535 U.S. at 367. The state must show "not merely that its regulation will advance its interest, but also that it will do so to a material degree." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S 484, 505 (1996). And the state must also show that the restriction "is no more extensive than necessary" to serve that interest. *Id.* at 504.

57. In prohibiting advertisements containing "the voice or image of a celebrity," Florida made no attempt to satisfy that burden. Florida has no legitimate interest in prohibiting celebrities in advertising; and its advertising rules do not directly advance—and are far more extensive than necessary to serve—any interest it might claim. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557 (1980). Rule 4-7.15(c) thus cannot survive First Amendment scrutiny.

**Florida has no valid interest in restricting celebrity advertising.**

58. "[U]nlike rational-basis review, the *Central Hudson* standard does not permit [a court] to supplant the precise interests put forward by the State with other suppositions"; only the specific interests asserted by the state are relevant to the commercial-speech analysis. *Edenfield*, 507 U.S. at 768.

59. Here, the state has not claimed that the speech that Rule 4-7.15(c) restricts is false or misleading. False and misleading advertisements are prohibited instead by Rule 4-7.13 ("Deceptive and Inherently Misleading Advertisements") and Rule 4-7.14 ("Potentially Misleading Advertisements").

60. Instead, the only purpose that Florida has asserted for the current version of the rule is that ads containing the voice or image of a celebrity are "unduly manipulative." Rule 4-7.15. As the Bar's 1995 task force explained it: "Testimonials by celebrities carry the inherent risk that a potential client will be unduly influenced by the celebrity's fame or personality." The Fla. Bar Joint Presidential Advert. Task Force, *Final Rep. & Recommendations* at 14 (1997). And members of the 2004 task force likewise relied on their perception of "a tendency of the public to make decisions on the basis of a celebrity lending credibility" to the advertising lawyer. Fla. Bar Advert. Task Force 2004, *Rep. & Recommendations*, A-14–A-15 (2005).

61. The state has no legitimate interest in regulating "manipulative" advertising. As the Eleventh Circuit noted in reviewing a constitutional challenge to

the Bar's former rule against "manipulative" lawyer ads, "almost every television advertisement employs visual images or depictions that are designed to influence, and thereby 'manipulate,' the viewer into following a particular course of action, in the most unexceptional sense." *Harrell*, 608 F.3d at 1255. Indeed, the Bar's claimed interest would justify prohibiting virtually *any* lawyer advertisement in any medium.

62. Nor does the restriction of "*unduly* manipulative" ads serve a valid state interest. Neither the Bar nor the Florida Supreme Court have explained what makes an advertisement "unduly" manipulative. The rules themselves do not define the phrase, and they illustrate its meaning in a circular manner. *See* Rule 4-7.15, cmt. ("[A]lthough some illustrations are permissible, an advertisement that contains an image, sound or dramatization that is unduly manipulative is not."). Given that advertising "by definition aims to 'manipulate' or 'intrude' [on] a consumer's decision-making," it is "implausible that such manipulation or intrusion could be 'undue,' at least in any way that attorneys could discern and regulators could measure." Jan L. Jacobowitz & Gayland O. Hethcoat II, *Endless Pursuit: Capturing Tech. at the Intersection of the First Amendment and Att'y Advert.*, 17 J. Tech. L. & Pol'y 63, 79 (2012).

**No evidence suggests that celebrities in lawyer ads are "unduly manipulative," misleading, or otherwise harm consumers.**

63. Neither the Florida Bar in proposing Rule 4-7.15(c), nor the Florida Supreme Court in adopting it, cited any evidence suggesting that ads containing "the

voice or image of a celebrity" are unduly manipulative or otherwise harm consumers. The rule arose not from an evidentiary record demonstrating an important need, but from a set of advertising rules that once prohibited virtually all lawyer advertising and that courts have since recognized violate the First Amendment. *See* Fla. Bar Advert. Task Force 2004, *Rep. & Recommendations*, A-1 (2005) (noting that the rules responded to the "proliferation of attorney advertising in the wake of [] *Bates*"); The Fla. Bar Joint Presidential Advert. Task Force, *Final Rep. & Recommendations*, at 3, 9, 27–28 (responding to the "blatant commercialization of the profession" after *Bates*).

64. There are no consumer complaints, disciplinary records, studies, or empirical research of any kind showing that even a single consumer has ever been misled or manipulated into hiring a lawyer based on a celebrity's appearance in the lawyer's advertisement. That absence of evidence alone establishes the rule's unconstitutionality. *See Alexander v. Cahill*, 598 F.3d 79, 95 (2d Cir. 2010) ("Defendants have … failed to provide evidence that consumers have, in fact, been misled by the sorts of names" targeted by the rule "and so have failed to meet their burden for sustaining this prohibition"). The "mere speculation and conjecture" of Bar task force members is not enough to justify a restriction on commercial speech. *Edenfield*, 507 U.S. at 770–71.

65. Instead, all the available evidence demonstrates the opposite: that "consumers do not attach such unquestioning trust to the words of celebrities." Lee,

*Lawyer Advert.: Consumer Attitudes, Response Patterns and Motivation Factors*, at 156. Rather than supporting its view that the public is unduly swayed by celebrity advertising, the Bar's survey evidence shows that consumers rate celebrity endorsements as "by far the *least* important consideration" in choosing a lawyer. Fla. Bar, *Survey of Public Attitudes toward Lawyer Advert.* 29, 31 (Mar. 2011) (emphasis added). Survey respondents "uniformly affirmed the view that celebrities are only paid performers" whose inclusion in advertising more likely "elicits suspicion rather than trust, simply by virtue of overexposure." Lee, *Lawyer Advert.: Consumer Attitudes, Response Patterns and Motivation Factors*, at 156.

66. Nor does the state's justification for the rule accord with common sense. Consumers have long been exposed to celebrities in advertisements for all manner of products and services, without apparent negative consequences. Celebrity athlete endorsements, for example, have been used by advertisers at least since Babe Ruth's endorsement of Red Rock Cola in the 1930s. After a century of acculturation to this stock advertising technique, consumers are unlikely to be so easily influenced by it.

67. Insurance companies, which commonly have interests adverse to Morgan & Morgan's clients, also commonly use celebrities in their advertisements—including State Farm ads featuring Jason Bateman and Nationwide ads featuring Peyton Manning—without any suggestion of harm.

68. The state's contrary position is not based on evidence, but on the "assumption that [consumers] are insufficiently sophisticated." *Pub. Citizen v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 223 (5th Cir. 2011) (striking down a restriction on depiction of judges). The First Amendment does not countenance that underestimation of the public. *See id.*; *see also Alexander*, 598 F.3d at 89. The U.S. Supreme Court has "refus[ed] to credit" the "paternalistic assumption" that consumers of legal services "are no more discriminating than the audience for children's television." *Peel v. Att'y Registration and Disciplinary Comm'n*, 496 U.S. 91, 105 (1990).

69. Among the states, only Florida imposes a total prohibition on the appearance of celebrities in lawyer advertising. The ABA's model rules and the rules of every other state allow celebrities to appear in such ads—as did Florida's own rules before 1990—with no apparent harm to the public. No evidence suggests that the 48 states that allow celebrity endorsements have been unable to adequately protect their citizens.

70. Pennsylvania is the only state other than Florida that contains any reference to celebrities in lawyer advertising. But even Pennsylvania's rule prohibits only "paid endorsement[s]" by celebrities. Pa. R. Prof'l Conduct 7.2(d). It is thus less restrictive than Florida Rule 4-7.15(c), which prohibits *any* use of a non-client celebrity's "voice or image"—even when the celebrity does not endorse or

recommend the advertising lawyer. No evidence suggests that Pennsylvania has been unable to adequately protect its citizens with its less-restrictive rule.

71. Although neither Florida's nor Pennsylvania's celebrity rule has previously faced a legal challenge, a federal court held that Louisiana's watered-down celebrity rule violated the First Amendment. *See Pub. Citizen, Inc. v. La. Att'y Disciplinary Bd.*, 642 F. Supp. 2d 539, 545 (E.D. La. 2009). Louisiana in 2008 adopted a prohibition on celebrity spokespeople but, in the face of a First Amendment challenge, later amended the rule to allow any "non-lawyer spokesperson" when accompanied by a burdensome "spoken and written" disclosure. *See id.* Despite the amendment, the court held the disclosure requirement unconstitutional for "lack of evidentiary support." *Id.* at 557; *see also Alexander*, 598 F.3d at 95 (holding unconstitutional a rule against endorsements where the state failed to prove that consumers would be harmed by advertising techniques "commonly seen, and indeed expected, in commercial advertisements generally").

72. The Federal Trade Commission—the federal agency charged with protecting consumers from misleading advertising and restraints of trade—also allows celebrity endorsements in all forms of advertising, provided that celebrities disclose their financial interest in contexts (such as press interviews) where that fact would be relevant but not obvious to consumers. *See* FTC, *Guides Concerning the Use of Endorsements and Testimonials in Advert.*, 88 Fed. Reg. 48092-01. Such concerns, however,

are not implicated by typical commercial advertising—like Morgan & Morgan's television and billboard ads—for which consumers understand that a celebrity will "be reasonably compensated." *Id.*

**The rule is far more extensive than necessary to accomplish the state's claimed goal.**

73. In addition to violating the First Amendment, Rule 4-7.15(c) is also unconstitutional because it is far "more extensive than necessary" to serve the state's claimed interest in preventing misleading advertising. *44 Liquormart,* 517 U.S. at 504.

74. The stated basis for the rule is the "inherent *risk* that a potential client will be unduly influenced" by a celebrity. The Fla. Bar Joint Presidential Advert. Task Force, *Final Rep. & Recommendations* at 14 (1997) (emphasis added). But even if there were evidence that *some* celebrity ads unduly influence consumers (and there is not), many others are inarguably harmless. For example, as noted above, the Bar's advertising committee held that Morgan & Morgan violated Rule 4-7.15(c) with a billboard offering a free youth football camp and containing the image of Miami Hurricanes player Malachi Toney—even though Toney never asked anyone to hire the firm.

75. If the Bar had evidence that particular kinds of celebrity ads harm consumers, it could have specifically prohibited those ads. For example, if the Bar could show that celebrity *endorsements* are harmful to consumers (and it cannot), it could prohibit just those ads—as Pennsylvania has attempted to do. *See* Pa. R. Prof'l

Conduct 7.2(d). What it cannot do is ban *all* celebrity ads on the ground that *some* are misleading. Although administering broad prophylactic rules may be easier than prosecuting specific false or misleading ads, the state cannot broadly suppress nonmisleading advertising "merely to spare itself the trouble of distinguishing such advertising from false or deceptive advertising." *Zauderer*, 471 U.S. at 646.

76. Alternatively, the state could have limited Rule 4-7.15(c)'s impact on protected speech by requiring disclaimers in cases where consumers may be misled, *see Pub. Citizen*, 632 F.3d at 223—as a handful of states already do. A few other states, for example, require a disclosure when payment is made to a person endorsing a lawyer or firm or when an endorser is not a client of the firm. *See*, *e.g.*, La. R. Prof'l Conduct 7.2(c)(1)(H). One state requires a disclosure "identifying the fact that it is a testimonial or endorsement," R.I. R. Prof'l Conduct 7.1. In its proposal to amend the rule, Morgan & Morgan suggested a similar disclosure "of the celebrity's relationship with the lawyer." Any one of these disclosures might have accomplished the Bar's purported goals without the need for a blanket ban on commercial speech. *See Thompson*, 535 U.S. at 371 ("[I]f the government [can] achieve its interests in a manner that does not restrict speech or that restricts less speech, [it] must do so.").

77. The state also lacks any justification for banning celebrities in every form of advertising media. The Bar justified its original celebrity rule based on the "unique power" of television "to induce viewers to respond immediately, without

reflection." Br. of The Florida Bar at 12, *In re Pet. to Amend the Rules Regulating The Fla. Bar*, No. 74987. But without articulating any reason for doing so, the Florida Supreme Court later expanded the rule to cover "*all* forms of communication in any print or electronic forum"—including websites and print advertising, for which not even the Bar has claimed that the rule is justified. *In re Amends. to Rules Regulating The Fla. Bar—Subchapter 4-7, Lawyer Advert. Rules*, 108 So. 3d at 616 (App. Rule 4-7.11(a)) (emphasis added). Even assuming celebrities on television pose some risk to consumers, it would not justify the decision "to lump all methods of lawyer communication together." *Id.* at 615 (Fla. 2013) (Pariente, J., dissenting). The Bar has never attempted to articulate a state interest that would justify such a broad-based restriction.

**The rule is poorly designed to protect consumers.**

78. The Supreme Court's mandate that restrictions on commercial speech must "directly advance the governmental interest and be no more extensive than necessary to serve that interest" requires a "fit between the [government's] ends and the means chosen to accomplish those ends." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486 (1995). Here, the "overall irrationality" of Florida's rule means that it cannot survive that test. *Id.* at 488.

79. If Rule 4-7.15(c)'s purpose was really to protect consumers from being unduly swayed by advertising, as the Bar claims, the rule's exception for ads featuring a "local announcer, disc jockey, or radio personality" would make no sense. Those

roles easily meet the definition of "celebrity," as the rule itself acknowledges by including them as an exception to the celebrity rule. But the Bar has identified no reason to believe that these specific types of celebrities, alone, are less likely than others to manipulate the public.

80. Rule 4-7.15(c) also illogically regulates celebrities more restrictively than it does "authority figures" like judges or police officers. Rule 4-7.15(b) permits the use of an actual or actor-portrayed "authority figure such as a judge or law enforcement officer" as long as that person does not "endorse or recommend the lawyer or act as a spokesperson for the lawyer." Any concern about perceived improper influence attributable to a "celebrity" would apply at least equally to an "authority figure," yet Rule 4-7.15 permits authority figures to appear in lawyer advertising in limited capacities, while prohibiting celebrities from doing the same.

**Claim two: Void for vagueness (under 42 U.S.C. § 1983)**

81. Rule 4-7.15(c) fails to provide advertising lawyers or Bar authorities guidance on what forms of advertising are prohibited by the rule, leaving standardless discretion in the hands of the Bar and inviting arbitrary and discriminatory enforcement. It is therefore unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment.

82. The rule's applicability in each case comes down to the speculation of Bar authorities about whether an individual celebrity meets an undefined standard

of recognizability. While giving the Bar discretion to prohibit nearly any advertisement containing a recognizable person, the rule provides lawyers with no standards with which to predict how that discretion will be applied in individual cases. Because the rule fails to "provide explicit standards for those who apply them" or to provide people "of ordinary intelligence a reasonable opportunity to know what is prohibited," it is unconstitutionally vague. *See Harrell*, 608 F.3d at 1254.

83. Even the potential that the Bar will find a person sufficiently recognizable creates self-censorship on the part of lawyers and a resulting chill on speech. *See City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). Advertising is expensive to produce, creating a strong incentive to leave out any elements that even arguably violate the Bar's rules to avoid the high cost of having to re-produce the ads. Moreover, lawyers who violate the rules are subject to discipline, including censure, suspension, or disbarment. Rules of Discipline 3-4.2, 3-5.1. Given the vagueness of the celebrity rule, lawyers who advertise in the state therefore face an unacceptable dilemma: Either interpret the literal language of the rules as broadly as possible or risk the possibility of professional discipline, including a possible loss of the lawyers' profession and livelihood. The resulting chill on speech cannot be reconciled with the First Amendment.

## REQUEST FOR RELIEF

The plaintiffs request that the Court:

A. Declare unconstitutional, both on its face and as applied to the plaintiffs' advertising, Florida Rule of Professional Conduct Rule 4-7.15(c)'s prohibition on advertising that contains "the voice or image of a celebrity";

B. Enjoin enforcement of Rule 4-7.15(c);

C. Award the plaintiffs their reasonable costs, expenses, and attorney's fees under 42 U.S.C. § 1988; and

D. Grant the plaintiffs all other appropriate relief.

August 14, 2026

Respectfully submitted,

*<u>/s/ Deepak Gupta</u>*
DEEPAK GUPTA
Bar No. 495451DC
GREGORY A. BECK
Bar No. 494479DC
JONATHAN E. TAYLOR
**pro hac vice forthcoming*
GUPTA WESSLER LLP
1400 16th Street NW
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

*Counsel for Plaintiffs*